Chief Justice Bibb
delivered the Opinion of the Court.
Virgil M’Cracken was killed in January 1813, in the battle of Raisin. His last will and testament, bearing date in November, 1812, was duly proved and admitted to record in Wood-ford county court, in April 1813, and Andrew M’Knight and Nathaniel Hart, two of the three executors appointed therein, obtained letters of probate, the other executor has not acted.
The testator gave to his wife Martha, three ne-groes, and certain liousehould furniture in lieu of her dower. He gave to each of his children, five in number, specific legacies of slaves, &c. and then said:
“I wish all my landed estateto be sold, and equally divided among my children at their marriage, or at their arrival at the age of eighteen years of the girls, or twenty years of the boys, giving two years credit for all my lands, except the place I now live on, which I wish to be kept for the purpose of raising my family. It is my wish that my interest in the saw mill and tract of land thereunto belonging, should be sold at two annual payments, the plantation whereon Henry Nall npw resides, not *343 to be sold, unless absolutely necessary for the purpose of paying my debts, until my youngest son arrives at the age of twenty one years, the negroes dvised to my children, to be kept together for the purpose of supporting and schooling them; but it is my wish that my executors should dispose of every foot of land for the purpose of paying my debts before the negroes should be sold. The bond I have upon brother Cyrus, in surveyor Williams’ hands to be sold at two years credit. The bond Seneca M’Cracken has on father’s estate, for three hundred acres of land, after giving credit for two-fifths, Ovid’s and my parts, to be sold at two years credit; and I hereby appoint my brother Ovid, Andrew M’Knight and Nathaniel Hart executors of this my last will and testament, with full powers to carry the same into as full and complete effect as I could do myself.”
Bill by tlie legatees.
Allegations the bill.
Objections to the settlement with the county court.
*343 In September, 1821, this bill was exhibited by Thomas lessee and wife Polly, the eldest daughter of the testator, Martha M’Cracken, Cyrus M'Cracken, Virgil M’Cracken and George M’Cracken, children of said testator, against the executors, and against Andrew M’Knight, who had caused himself to be appointed guardian of all the children, for an account of the estate, and management by the executors and the guardian.
They charge that the executors had taken possession of the whole estate real and personal, but that they seemed to have been generally managed and controled by said M’Knight, who had wasted it; that the executors had caused their accounts to be allowed by commissioners appointed by the county court; and to various items of that account they object, for reasons stated; they allege omissions of moneys received, overcharges against the heirs, and call for a full explanation and settlement; the various items objected to, and allegations made to surcharge and falsify the accounts rendered to the county court, need not be specified.
Besides the specific charges of unjust allowance in the accounts' as rendered, the bili complains of diminution in the account of the sums actually re *344 ceived by the executors for sales of the personal estate, and that it did actually sell for more than is accounted for; that M’Knight improperly and contrary to law, disposed of the bond of Cyrus M’-Cracken, alluded to in the will; that M’Knight took possession of the real estate, and occupied a part of it himself for years, and has accounted for his own occupation at a rent far below the usual, rent in those years; and that he cleared the land improperly and injuriously, and committed waste; for which occupation and waste, they demand a reasonable rent and account. The bill charges that sundry sums of money, and items of property came to the hands of the executors not accounted for, and they call upon the executors for a full account of the estate real and personal, and how they have disposed of it. They state that the complainants, Jessee and wife, had been permitted to occupy the home place, as it is described in- the accounts, for the year 1819, at $200, and for the year 1820, at ,$'200; that he had paid the rent of 1819, and a part of 1820, leaving a balance of $118 25, for which Nathaniel Hart, one of the executors had distrained, and said Jessee had entered into a rep levy bond to pay the amount; that said Jessee had married the said eldest daughter about four years before filing the bill, and the executors refuse'either to pay him his proportion of the estate, or to allow him a credit on the account for rent.
Object of the bill
Defence of the executors.
The object of the suit is an account from the executors, and a distribution, and a payment to Jessee and wife of her share, and for injunction against the proceedings on the replevin bond for rent, and as to the other complainants for general relief.
The executors rely on the settlement returned to the county court, and make no other or further account. M’Knight acknowledges that he occupied the home place for years, at a rent of $100 per year, which he insists vías enough; he admits that he cleared some land, but denies waste. He states how, and for what reasons he settled with Cyrus M’Cracken, for the bond mentioned in the will.
2.C rt a o o 5. TO ■a o
.Reports of th^county court, exliib-iteci b7 theh^answer" examined. 1
The court not only dismissed the bill of the complainants, but on behalf of the defendants, the executors, entered a decree in their favor, against the heirs for $199 22, a balance found against them, according to the mode of adjustment adoped, and dissolved lessee’s injunction with damages¿from which the complainants appealed.
The amount decreed in favor of the defendants below, is the balance reported and made out by the commissioners appointed by the county court, as the result of three successive reports, in different years, the last of which bears date, seventh of April, 1819, and reported to the May court of that year.
Upon the three several reports made by the commissioners, these remarks are due. They are made by intelligent men, and so far as M’Knight, the executor, furnished them with his claims for charges against the estate, they are clearly stated by the amount, and by reference to the number of tbe voucher put on it by them when exhibited by the executor; but as the executors in their answers have exhibited the report of the commissioners, without the documents referred to by the commissioners, the account is very unsatisfactory. The commissioners have likewise stated the sums reported by the executor to them, as credits in favor of the estate, which are generally reported by the names of the persons from whom received; but the consideration and manner, for which those persons became indebted, are omitted, except in a few instances, and no documents are referred to on this side of the account, to give further explanation. The accounts, therefore, are far from being satisfactory to this court, and fall short of the account which the complainants had a right to expect; far short of the explanation which was due to the subjects, and not such as the executors ought to have given in response to the bill. The executors may no doubt understand them, and upon what accounts the moneys were received, hut others cannot, without further explanation, (except in a few instances,) understand whence those moneys arose. Neither do the *346 executors or either of them, profess that the accounts so rendered to the county court, do contain a full statement of all the moneys received by them from the estate. Moreover, it is evident from the proof, that those accounts are not full and complete, for they end in April, 1819; the rent received from Jessee, for the home farm, for 1819 and 1820, are not included, nor the vents o£ that farm after the report of April, 1819; there isno account ofthe rent of the farm called Nall’s, except for the years 1814, and 1817; nor is there any account of the pension which M’Knight says, in his answer, was allowed by government, and which he had in view to receive by applying to be appointed guardian. This did not belong to the executors account, and therefore, does not appear in tire report to the county court. But when called by the bill, to answer as guardian, he was bound to render an account of it, but has failed to render any account whatever as guardian; and yet there is a decree over against the heirs, for a balance reported in April, 1819; when it is evident that the rents alone, not brought into account for the farms, would have shifted the balance upon the accounts, as insisted on by the answers.
It seems, the order of the county court for the report of the commissioners, stating and settling the account of the executors to be recorded, is a confirmation of the allowances made by the commissioners to the executors for their services.
In the first report, of the 5th April, 1815, the commissioners make a balance in favor of the executor of $84 16 1-2 cents. To this report is appended an explanation of a charge, in the debits against the estate, of two hundred dollars for the services and expenses of the executor for two years, commencing April 5th, 1813, and ending April 5th, 1815, at one hundred dollars per year. This annual charge for trouble and expense, is repeated in the report of the 5th January, 1818; being .two years and nine months, as stated and charged at $100 per year, amounting to two hundred and seventy-five dollars; and again jn the report of the 7th April, 1819. A charge for services &c. up to that date, is made of one hundred dollars; thereby producing a result m 1818, of a balance of $234 35, in favor of the executor, and in 1819, a balance in his favor of $199 22, as decreed against the heirs. So that the executor, M’JNight, has been allowed the sum of five hundred and seventy-five dollars by way of salary. Upon this, the *347 Commissioners reported, (on the 5th April, 1815,) that they had thought fit to allow the charge of $200, in consequence of the difficulty and trouble attending the many law suits depending and undetermined. In the second and third accounts, the commissioners make no report upon this subject; The charges were made and allowed. These allowances are "particularly objected to by the bill as improper. The county court did not act upon this allowance, either by approving or disapproving, except only by ordering the report to be recorded* In ordinary cases, we would not scan critically the orders of the county courts. If they conform substantially to the requisites of the law, they ought to be deemed sufficient. This allowance, it is true, is extraordinary; far beyond the per centage usually allowed executors and administrators. The statute says, (1 Digest, 532, sect. 51;) that “executors and administrators, shall be allowed, in their accounts, all reasonable charges and disbursements, which they shall lay out and expend in the funeral of the deceased, and other their administration and in extraordinary cases, may be allowed such recompense for their personal trouble, as the court, vn passing their accounts, shall judge reasonable.”
Where the legatees surcharge an extraordinary allowance, made by the county court to the executors—(a salary of 10 .per cent per an-num)—it must be supported by proof in the commissioners report, or evidence in the cause, or it will be disallowed.
*347 The intendment is, that the court adjudged this allowance reasonable. The recording of the accout Is ordered.
But as these charges are expressly pointed out as surcharges, and unreasonable, we have looked into the proof for something to justify the allowance. The offices of executors and administrators, are useful and necessary; no illiberally should be indulged towards them, so as to discourage men from the undertaking. But they would lose much of their utility, if converted into offices of profit and great gain to the executors and administrators, and of serious charge and burthen upon the estate. They are, by appointment of testators, or of the law, in case of intestacy, intended to be conferred oir friends or relatives, and expected to be undertaken more from considerations of friendship, than of *348 gain; to be exempted from loss, is what the law principally intends. We have not been able to find in this record, evidence to justify such extraordinary allowance to that extent. We see nothing to to justify more than the allowance of ten per cent pn disbursements; more especially, when such ex? traprdinary allowance is attempted to be made an activé charge upen the children, beyond the annual proceeds of their estates.
Charge against the executor, as testamentary guardian, for the rents of a farm occupied by himself, increased.
#7asie committed by (he clearing of ¿and.
The next disputed item, respects the rents of the home place, during the occupancy of the executor, M’Night. He has charged himself and credited the estate with one hundred dollars per year for 1814, 1815, and11816, one hundred ánd and twenty for 1817, and one hundred hi?d thirty dollars for jS18;yet in 1819, the same farm was rented to lessee the husband of one of the children, at two hundred dollars. Mr. M’Night was a good tenant, who put the place in repair, and kept it so. The executor Hart, rented it to him at those prices, as Hart states in his answer. Ovid M’Craeken has never qualified. It appears clearly, that the rents with which the executor has charged hiinself, are far below the customary rents per acre in those years, and in that neighborhood. The minimum rent, to good tenants, was two dollars per acre, in money. Some farms rented as high as fifteen shillings, and some at three dollars per acre, and some at two and an half,’ and some at three barrels of corn per acre; but two dollars per acre was the lowest rent. M’Night, it appears, during his occupancy, cleared about fifteen acres, making the whole about sixty-six acres of cleared land. When the executor cleared the several, parcels does not appear. He ought to be charged with an annual rent during his occupancy, at the rate of two dollars per acre, for the cleared land.
The next subject is, waste in clearing this land; it appears from the testimony, that this land ought not to have been cleared, the proportion of cleared land to the whole tract, was such, as that the executor was not justified in cutting'down and clearing away this timber. He musí'answer for the damages q£ such waste.
Charge for the fallen wood used • for fuel' on other land.
Charge for impfove-ments made on the farm, rejected; and the law in such case stated.
Besides this, the executor was a partner in' a neighboring distillery, and supplied his part' of the fuel from this farm; for this waste and consumption of fuel he must account. The excuse suggested by his interrogatories to the witnesses is, that it was the fallen timber. Be it so, it was not his; having used it as his own, he must pay for it.
The next disputed item in the account, appears Upon the repoi’t by the commissioners to the county court, of their allowance of thirty-seven dollars, seventy-five cents, for building a barn, exclusive of the labor of the executor; that charge appears as of the 26th of December, 1817; and also Carpenters’ hill for building a kitchen; this latter amount cannot be distinguished among the charges, as now be= fore this court, but was probably distinguishable by the documents referred to by the commissioners. They reported them useful and important to the estate; the proof shows them to be valuable, and con-veniencies which were wanted. A court of equity will permit a guardian, or an executor who stands by the will in the light of testamentary guardian and curator of the real estate, to dispose of apart •.of the annual income of the Ward’s estate, beyond what is required for hiS Support and education, in improvements, to increase the rents, or for the comfortable reception' of the ward at full age. But the guardian, or executoi* so entrusted, will not be permitted to encumber the estate, or the person of ’the war'd by debts'contracted beyond thfe surplus annual incdme. It js pf great concern to wards and to society, that young'perscns entering’ into the business of life, shall not be encumbered with debts, at ah age when they 'have least prudence and discretion,' as to the means of providing for them. The obseryance'of the rule, that the profits of the Ward’s'estate shall not be entrenched, invaded and diverted towards improvements, until after a sufficiency for his maintenance, is imperiously demanded by the provisions of the statute, which authoris-es the county court to bind out “every orphan who hath no estate, or not sufficient for maintenance out of the profits.” (1 Dig. 644) There is great difficulty in allowing the executor for these buildings; *350 seeing that lie made them rather for his own personal accommodation, than with a view to increasé the rents, and has used them to create a charge upon the heirs, beyond the proceeds of the estate, and obtained a decree in his favor. Had his answer disclosed a full statement of the affairs and situation of the estate, and showed by his own account, a clear surplus in his hands for the use of the children, we should have allowed for those buildings, as they are proved to be great' conveniences, and suitable to the farm. The testator in his lifetime had done without them, and so did the executor for part of his term, and the tenement could have been rented without them, for moré money than the executor charged himself for rent, after they weré erected. Allowing the executor all due credit fof his care and preservation of the inheritance, for being a careful tenant, who surrendered the premises in good order, we aré constrained to say, that his clearings and buildings, and use of fuel for the distillery, whilst ho brings the heirs in debt, show á management for his own profit, rather than for thó profit of the childreii. under the circumstances, we think it safer to adhere to the general rule, than to make this use an exception. Those charges fof the barn and kitchen must be disallowed.
Error in the. accounts corrected.
In the account rendered to the county court* there is a charge of interest, of ‡13 46 1-2, on the balance of $84 16 1-2, produced by the first account. This cannot be allowed, because that balance was improperly produced, as well by tbe overcharges for salary before directed to be disallowed, as by the diminished allowance for rent of the home place; but the executor to produce that balance, omitted to charge himself with the sum of $73, for articles purchased by him at the sale of the estate in 1813; and $21, balance of rent for the year 1814, of Nall’s farm, as it is called, which are noticed in the second account, so that by withholding these two charges, of $94; in the first account rendered in 1815; he produced a balance in his favor, of $84 16 l-2;andin£hesecondaecount, renderedin January, 1818, he charged interest on that sum of $84 16 1-2; making thus an interest of 13 dollars, *351 46 1-2, upon money in his own hands, as a charge against the children on an ostensible balance, when the real balance was against him.
An executor cannot raise an interest account for advances;
Compromise, made by the executors, approved.
Decree for the executors and guardians, against the devisees^ their wards, erroneous.
By the like overcharge for services, and by the diminution of rents, &c. he produced a balance of $¡234 35 1-4, on the second account, and in the third account interest on that balance is charged, at $17 57 1-2. This balance would have been shifted by a proper settlement of debits and credits.
But as to the interest so charged, it is wrong in principle. An executor cannot be allowed thus to raise an interest account against the estate, which he represents, and against the wards for whom he stands as testamentary curator of the real estate devised.
As to the bond of Cyrus M’Cracken, alluded to in the will, as being in the hands of a surveyor Williams, we think that the compromise made with said Cyrus, under the circumstances of dispute and difficulty was prudent and advisable. It had been held by the testator from 1805, until his death; it was a subject of contention between the brothers, Cyrus and Virgil, and given by Cyrus to Virgil, when Cyrus was in his minority. The arrangement made by the executor, was more prudent and beneficial than a sale at auction, and was made apparently in good faith, and with due regard to the interests of the children of the testator.
The testator by his will has placed his real estate, with the exception of his home place, and Nall’s place, at the disposal of his executors for payment of his debts, and afterwards to distribute the surplus among his children, as they arrive respectively at the ages specified in the will. The home place and Nalls, not to be sold, but under qualifications. It will be seen, by the reading of the will, that the testator has divided the duties oí his executors, and their powers over his slaves and lands. Part of his real estate is made disposable in aid of the personal estate, for payment of debts. His home place and the slaves, are set apart, but put under the control of his executors, as a fund for supporting and school” *352 ing his children. The wits of the home place are not placed under the control of the executors for payment of debts; it is a fund for support and education, unless absolutely necessary for payment of debts, that place is to be kept for raising the family. The slaves also, although specifically devised, were to be kept for support and education of the children. The executors, or rather the acting executor, (for Mr. Hart has had but a small share in the transactions,) seem not to have attended to the two attitudes in which they stood, as .executors for payment of debts, and as testamentary guardians, (sub modo,) for managing the estate of the children, and dividing out to them, as they arrive at the proper ages, or marry. They have kept the accounts and rendered them to the county court, blending the two funds, and finally, have claimed a balance personally against the children. That part of the decree is wrong; it could not have been so rendered, if there had been a balance due the executors, no such decree was asked for by their answers, or by cross bill, no such balance is due in equity.
Suit by distress warrant for rent against one of the devisees, disapproved.
The eldest daughter having married, Jessee the husband, and his wife Polly, were entitled to her share: The court ought to have enjoined Hart from distraining or proceeding against Jessee as tenant of his wife’s estate, until the account was fairly made, lessee’s share ascertained, and whatever was due to Jessee, should have been applied, first to extinguish the balance of rent, and the surplus paid over to him.
So as to the shares of the others, they should have been ascertained and turned over to the guardian’s account. The executors ought not to be per? mitted to go on blending the whole estate in their accounts as executors merely, forgetting their duty as testamentary curators of the estates of the children, The situation in which Jessee is placed, is ah illustration of the impropriety of suffering the executors to go on in their construction of tire will. Jessee married the eldest daughter about four years before this bill filed, she was then entitled to her share of the estate, under the exceptions and *353 reservations contained in the will; more than eight years had elapsed since tiie executors obtained letters of probate, before bill filed, and yet the executors refused to pay Jessee his share, and distrain upon hirfi as occupier of part of the estate belonging to his wife.
Decree.
Barry and Depew, for appellants; IVickliffe, for ap-pellees.
It seems to this court, that the allowances of the salary, or yearly sum to the executor was improper; it should have been confined to an allowance of ten per cent on disbursements; that the rents of the home place, during the occupation of the executor are too low; they ought to have been at two dollars per acre, for the cleared land; that the executor ought to have been charged with the waste committed in clearing the land during his occupancy; also with the fuel supplied by him to the distillery he carried on in conjunction with Mr. Porter, on an adjoining tract of land; that the claim for building the barn and the kitchen, ought to haveb.een rejected; that the interest charged against the estate in the accounts rendered to the county court, ought to have been disallowed; that thp omissions of the rents for the farm called Nall’s, received by the executors, ought to be charged against them; that the other rents since 1818, ought to be charged against them and that the accounts ought to have been referred to an auditor to hear, examine and state as to these arid all others, including the pension and other omissions of debits against them, the defendants, for the purpose of enabling the court to make a final decree; and in the mean time, that the defendants ought to have been injoined from proceeding against Jessee for rent.
It is, therefore, ordered and decreed, that the decree of the circuit court be reversed, and that the cause be remanded to that court for further proceedings, according to the principles expressed in this opinion, and as required by the principles and usages of courts of equity.
And it is further ordered and decreed, that the appellees pay to the appellants their costs, &a.